AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of Oregon

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )   Case No. 6:22-mc-793 |
| Digital Devices currently located in Schaun Johnson's "inmate | ) |
| property" on the premises of the Deschutes County Sheriff's Office | ) |
| Adult Jail in Bend, Oregon, as further described in Attachment A | ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Digital Devices currently located in Schaun Johnson's "inmate property" on the premises of the Deschutes County Sheriff's Office Adult Jail in Bend, Oregon, as further described in Attachment A.

located in the _____ District of _____ Oregon _____ , there is now concealed *(identify the person or describe the property to be seized)*:

The information and items set forth in Attachment B hereto.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii) | Possession with Intent to Distribute Methamphetamine |
| 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi) | Possession with Intent to Distribute Fentanyl |
| 18 U.S.C. 922(g)(1) | Felon in Possession of a Firearm |
| 18 U.S.C. 924(c)(1)(A)(i) | Possession of a Firearm in Furtherance of a Drug Trafficking Crime |

The application is based on these facts:

See affidavit which is attached hereto and incorporated herein by this reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Michael Aguilar, Special Agent, DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ Telephone at __3:30pm__a.m./p.m. _____ *(specify reliable electronic means)*.

Date: __August 11, 2022__

_____
*Judge's signature*

City and state: __Eugene, Oregon__

Mustafa T. Kasubhai, United States Magistrate Judge
*Printed name and title*

DISTRICT OF OREGON, ss:          AFFIDAVIT OF MICHAEL AGUILAR

**Affidavit in Support of an Application Under Rule 41
for a Warrant to Search and Seize Evidence Including Digital Evidence**

I, Michael Aguilar, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.      I am a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed since May 1998. I am currently assigned to the Bend, Oregon Task Force. I have completed seventeen weeks of DEA Basic Agent Training at the DEA Academy in Quantico, Virginia and continuing law enforcement education throughout my career. In my capacity as a Special Agent, I have conducted investigations of the Controlled Substances Act, that is, Title 21 United States Code, Section 841, et seq., and related offenses. My training and experience have involved, among other things: (1) the debriefing of defendants, witnesses, and informants, as well as others who have knowledge of the distribution and transportation of controlled substances and of the laundering and concealment of proceeds of drug trafficking; (2) surveillance; (3) analysis of documentary and physical evidence; and (4) the "undercover" purchases of controlled substances. In addition, I have participated in federal search warrants and wiretap investigations, including acting as the case agent and affiant on Title-III investigations.

2.      I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search and examination of two cellular telephones: a) a Samsung cellular telephone (hereinafter, "Device #1"), which is currently stored, in custodial law enforcement possession, at the Deschutes County Sheriff's Office (DCSO) Adult Jail at 63333 West Hwy 20, Bend, Oregon 97703 previously labeled as

**Affidavit of Michael Aguilar**                                             **Page 1**

DCSO exhibit JM15, and b) a Motorola cellular telephone (hereinafter "Device #2"), which is currently stored, in custodial law enforcement possession, at the DCSO Adult Jail at 63333 West Hwy 20, Bend, Oregon 97703, previously labeled as DCSO exhibit JM18.   Both Devices are described in Attachment A hereto, and this warrant application seeks the extraction of electronically stored information from the Devices, as described in Attachment B hereto. As set forth below, I have probable cause to believe and do believe that the items set forth in Attachment B constitute evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846 and Title 18, United States Code, Sections 922(g)(1) and 924(c)(1)(A)(i).

3.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## Applicable Law

4.     Title 21, United States Code, Sections 841(a)(1) (distribution of a controlled substance) provides that it is unlawful for any person, knowingly or intentionally, to manufacture, distribute or dispense, or possess with intent to manufacture, distribute or dispense a controlled substance (fentanyl, methamphetamine and cocaine). Title 21, United States Code, Sections 846 provides that it is unlawful for any person to attempt or conspire to violate the above section.

5.      Title 18, United States Code, Section 922(g)(1) provides that it shall be unlawful for any person – (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year to possess, in or affecting commerce, any firearm or ammunition.

6.      Title 18, United States Code, Section 924(c)(1)(A)(i) provides criminal penalties for any person who, during and in relation to any crime of violence or drug trafficking crime, for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who in furtherance of any such crime, possess a firearm.

**Statement of Probable Cause**

7.      On January 13, 2022, Schaun JOHNSON was arrested in Deschutes County, Oregon by law enforcement officers from the Central Oregon Drug Enforcement (CODE) team for drug offenses (unlawful possession, delivery and manufacture of controlled substances), attempt to elude a police officer, recklessly endangering, reckless driving, and a firearm offense (felon in possession of a weapon). The CODE team is a multi-jurisdictional drug task force in Bend, Oregon that includes the Drug Enforcement Administration.

8.      In approximately December 2021, the CODE team received information from a Confidential Reliable Informant (CRI) that Schaun JOHNSON was selling methamphetamine, heroin and fentanyl pills within Deschutes County, Oregon and provided a telephone number for JOHNSON of (541) 851-6092. In addition, the CRI stated that JOHNSON would travel to the Portland, Oregon area to obtain the drugs.

9.      The CRI was cooperating in exchange for consideration on a pending criminal case. The CRI had provided information in the past to law enforcement that had resulted in arrests and the seizure of commercial quantities of drugs. The CRI had been working with law

**Affidavit of Michael Aguilar**                                                    **Page 3**

enforcement more than 6 months, and in that time, had not provided any information to DCSO Detective Jeff Pope that was known to Detective Pope to be untruthful or dishonest. Detective Pope had reviewed the CRI's criminal history and located previous convictions for Unauthorized Use of a Motor Vehicle, Assault 4, Felon in Possession of a Weapon, Unlawful Delivery of Methamphetamine, Unlawful Possession of Methamphetamine, Probation Violation, Conspiracy, Unlawful Use of a Weapon, False Information to Police, Carry Concealed Weapon, Criminal Driving while Suspended, DUII, Theft 3, Robbery 3 and Theft 1. The CRI had purchased commercial quantities of drugs from JOHNSON on no fewer than three occasions over a period of no more than 6 months. In addition, the CRI had made trips with JOHNSON to the Portland, Oregon area where JOHNSON had been resupplied with drugs.

10.     On January 12, 2022, law enforcement officers were conducting surveillance of JOHNSON in Bend, Oregon and observed JOHNSON at the Enterprise car rental location at 2301 NE Division Street, Bend, Oregon 97701. JOHNSON was observed driving away from the business in a black 2021 Ford F-150 with California license plate 30563D3. Law enforcement officers observed JOHNSON making additional stops in Bend, Oregon before heading northbound on Highway 97.

11.     Law enforcement officers followed the vehicle to the Portland, Oregon area where the vehicle parked in the 4000 block of NE Broadway. Law enforcement officers observed JOHNSON exit the vehicle. Law enforcement officers were then able to install a mobile vehicle tracking device on the vehicle while it was parked at this location. A state court order was obtained and signed by the Honorable Judge Walter Miller of the Deschutes County Circuit Court. During the interim between tracker installation and the time the order was signed, the

**Affidavit of Michael Aguilar**                                                    **Page 4**

tracker was not monitored by law enforcement officers other than to confirm that the tracker was working properly. Subsequently, physical surveillance of JOHNSON and the vehicle was terminated.

12.     On January 12, 2022, at approximately 11:50 p.m., the tracker data showed that the tracker departed the Portland, Oregon area and made stops in Middleton, Oregon, Millersburg, Oregon, and Eugene, Oregon, heading to Central Oregon area via Highway 58.

13.     On January 13, 2022, at approximately 9:06 a.m., the tracker data showed that the tracker arrived in Crescent, Oregon at the intersection of Highway 58 and Highway 97. Law enforcement officers that were waiting in Crescent, Oregon were able to identify the vehicle as it passed through the town and followed it to La Pine, Oregon where it made three stops before continuing northbound on Highway 97 towards Bend, Oregon.

14.     DCSO Deputy Kyle Pettit initiated a traffic stop of the vehicle for speeding on Highway 97 just south of Bend, Oregon. Bend Police Department Robert Pennock and his drug detection K-9 "Ladybug" responded to the stop location and conducted a free air sniff of the exterior of the vehicle, concurrent to Deputy Pettit's traffic stop. Officer Pennock advised Deputy Pettit that Ladybug gave him a positive alert for the odor of a controlled substance emanating from within the vehicle. Deputy Pettit told JOHNSON to exit the vehicle. JOHNSON then put the vehicle in gear and fled from the traffic stop in the vehicle.

15.     After a short vehicle pursuit, JOHNSON pulled the vehicle over and fled on foot into the woods. A short time later, JOHNSON was taken into custody by law enforcement officers.

16.     After JOHNSON was taken into custody, Officer Pennock advised that as he was

**Affidavit of Michael Aguilar**                                                    **Page 5**

in pursuit of the Ford F-150, he passed by a white shopping bag on the left side of the fast lane

on Highway 97 that was still rolling and in motion as he drove by. Officer Pennock advised that

all other vehicles were in the slow lane. Officer Pennock believed that the bag came from the

driver side of the Ford F-150 and advised that he was going back to where he saw this bag to

investigate. Minutes later Officer Pennock advised that he had located approximately three

pounds of suspected methamphetamine lying in the highway where he saw the bag rolling during

the pursuit.

      17.    Detective Dustin Miller advised that that he was in front of the pursuit by ¼ to ½

mile and had not seen the bag that Officer Pennock described when he went by that location just

before the Ford F-150 driven by JOHNSON.

      18.    Law enforcement officers recovered a white and red Target shopping bag (later

labeled as DCSO exhibit JM2) and three packages wrapped in plastic wrap which contained a

white crystalline substance of suspected methamphetamine (later labeled as DCSO exhibit JM3)

from Highway 97, believed to have been thrown from the vehicle. Subsequent laboratory

analysis of DCSO exhibit JM3 revealed that it was methamphetamine.

      19.    In addition, law enforcement officers recovered a gray SentrySafe brand lockbox

(later labeled as DCSO exhibit JM4) from Highway 97 believed to have been thrown from the

vehicle. The lockbox did not appear to be weathered and had significant damage to the bottom

edge as though it had been thrown from a moving vehicle.

      20.    On January 13, 2022, a state search warrant was obtained and signed by the

Honorable Judge Walter Miller of the Deschutes County Circuit Court that was executed upon

the black 2021 Ford F-150 with California license plate 30563D3 and the gray SentrySafe brand

**Affidavit of Michael Aguilar**                             **Page 6**

lockbox (DCSO exhibit JM4).

21.     Seized from the vehicle were the following items:

DCSO exhibit JM7 - "Gunmate" holster that was found in a coat located in the backseat.

DCSO exhibit JM8 - extendable baton that was found in a coat located in the backseat.

DCSO exhibit JM9 - box of "Cling'n'Seal" plastic wrap that was found in the backseat.

DCSO exhibit JM10 - gray lock box that was found in a blue backpack located on the backseat.

DCSO exhibit JM11 - Beretta Model 84F .380 caliber pistol that was located in JM10.

DCSO exhibit JM21 - loaded magazine (not inserted in the pistol) that contained (11) rounds of .380 caliber ammunition that as located in JM10.

DCSO exhibit JM12 - box of 50 .380 caliber rounds that was found in JM10.

DCSO exhibit JM13 - a digital scale in working order that was found in the driver's side door pocket.

DCSO exhibit JM14 - a letter addressed to JOHNSON that was found in the center console.

DCSO exhibit JM15 - black Samsung cellular phone (Device #1) that was found in the center console.

DCSO exhibit JM16 - plastic magnetic container that was found in the center console.

DSCO exhibit JM17 - eight small white pills imprinted with "M/57/55" that were found in the center console. According to Drugs.com, the markings on these pills indicated that they should be methadone hydrochloride, a Schedule II controlled substance.

22.     Seized from the gray SentrySafe brand lockbox (DCSO exhibit JM4) were the following items:

DSCO exhibit JM22 - $45.58 in U.S. Currency.

**Affidavit of Michael Aguilar**                                                    **Page 7**

DSCO exhibit JM23 - approximately 6.14 grams of a brown tar like substance of suspected heroin, which was later determined to be fentanyl, via laboratory analysis.

DSCO exhibit JM24 - approximately 0.69 grams of off-white substance of suspected cocaine, which was later determined to be cocaine, via laboratory analysis.

DSCO exhibit JM25 - miscellaneous drug packaging and another individual's driver's license.

DSCO exhibit JM26 - ten unknown small white pills without identifiers.

DCSO exhibit JM27 - approximately 3.82 grams of a white crystalline substance suspected to be methamphetamine.

DSCO exhibit JM28 – approximately 207.2 grams contained with three Ziploc bags containing small blue pills imprinted with "M/30", which was later determined to be fentanyl via laboratory analysis.

23.     A Motorola 5G cellular telephone (DCSO exhibit JM18, Device #2) was located on JOHNSON's person at the time of his arrest.

24.     On January 5, 2022, DEA served a DEA Administrative subpoena RN-22-089638 upon Verizon Wireless for telephone information for (541) 851-6092, which is believed to be the Motorola cellular telephone described as Device #2.

25.     On January 8, 2022, Verizon Wireless responded to the DEA Administrative subpoena and the information revealed that the phone was subscribed to Schaun JOHNSON at 1209 NE Burnside Ave, Bend, Oregon, with an activation date of March 10, 2021.

26.     On July 7, 2022, DEA served a DEA Administrative subpoena RN-22-305136 upon EAN Holdings, also known as Enterprise, for rental information for the 2021 Ford F150 pick-up truck with California license plate 30563D3.

**Affidavit of Michael Aguilar**                                    **Page 8**

27.     On July 20, 2022, EAN Holdings responded to the DEA Administrative subpoena and revealed that Schaun JOHNSON rented the vehicle with a Visa credit card in JOHNSON's name on January 12, 2022, at approximately 1:52 p.m. at 2301 NE Division Street, Bend, Oregon 97701. JOHNSON's customer profile with EAN Holdings revealed that JOHNSON's telephone number was listed as (541) 851-6092.

28.     On January 13, 2022, law enforcement officers lodged JOHNSON at the DCSO Adult Jail in Bend, Oregon.

29.     On January 18, 2022, Device #1 and Device #2 were transferred from the DCSO evidence section to the adult jail to be placed in JOHNSON's inmate property.

30.     Device #1 is currently in the lawful custodial possession of the DCSO Adult Jail. It came into the DCSO Adult Jail possession by seizure incident to arrest.

31.     Device #1 is currently in "inmate property" at 63333 West Hwy 20, Bend, Oregon 97703, previously labeled as DCSO exhibit JM15. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the DCSO.

32.     Device #2 is currently in the lawful custodial possession of the DCSO Adult Jail. It also came into the DCSO possession by seizure incident to arrest.

33.     Device #2 is currently in "inmate property" at 63333 West Hwy 20, Bend, Oregon 97703, previously labeled as DCSO exhibit JM18. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the

possession of the DCSO.

34.     On June 22, 2022, Schaun JOHNSON was charged via indictment in the District of Oregon, Eugene Division, for the following offenses:

• Title 21, U.S.C. § 841(a)(1),(b)(1)(A)(viii) Possession with Intent to Distribute Methamphetamine,

• Title 21, U.S.C. § 841(a)(1),(b)(1)(B)(vi) Possession with Intent to Distribute Fentanyl,

• Title 18, U.S.C. § 922(g)(1) Felon in Possession of a Firearm, and

• Title 18, U.S.C. § 924(c)(1)(A)(i) Possession of a Firearm in Furtherance of a Drug Trafficking Crime.

35.     Based on my training and experience, I use the following technical terms to convey the following meanings:

        a.     *Wireless telephone.*   A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones

**Affidavit of Michael Aguilar**                                      **Page 10**

may also include global positioning system ("GPS") technology for determining the location of the device.

   b. *Digital camera*. A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. This storage media can contain any digital data, including data unrelated to photographs or videos.

   c. *Portable media player*. A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

   d. *GPS*. A GPS navigation device uses the Global Positioning System to display its current location. It often contains historical records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated as "GPS") consists of 24 NAVSTAR satellites

**Affidavit of Michael Aguilar**                **Page 11**

orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

   e. *PDA.* A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive email. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

   f. *Storage medium.* A storage medium is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

   g. *Internet.* The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even

when the devices communicating with each other are in the same state.

36.     Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at http://www.samsung.com and http://www.motorola.com, I know that the Devices most likely have capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, storage medium in the form of a microSD card and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

37.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the devices. This information can sometimes be recovered with forensics tools.

38.     Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

39.     The initial examination of the Devices will be performed within a reasonable amount of time not to exceed 120 days from the date of execution of the warrant. If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court within the original 120-day period from the date of execution of the

**Affidavit of Michael Aguilar**                                                                    **Page 13**

warrant. The government shall complete this review within 180 days of the date of execution of the warrant. If the government needs additional time to complete this review, it may seek an extension of the time period from the Court.

40.     If, at the conclusion of the examination, law enforcement personnel determine that particular files or file folders on the Devices or image do not contain any data falling within the scope of the warrant, they will not search or examine those files or folders further without authorization from the Court. Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

41.     If an examination is conducted, and it is determined that the Devices does not contain any data falling within the ambit of the warrant, the government will return the Devices to its owner within a reasonable period of time following the search and will seal any image of the Devices, absent further authorization from the Court.

42.     If the Devices contains evidence, fruits, contraband, or is an instrumentality of a crime, the government may retain the Devices as evidence, fruits, contraband, or an instrumentality of a crime or to commence forfeiture proceedings against the Devices and/or the data contained therein.

43.     The government will retain a forensic image of the Devices for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory

**Affidavit of Michael Aguilar**                                        **Page 14**

evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

44.   *Manner of execution.*   Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

### Conclusion

45.   Based on the foregoing, I have probable cause to believe, and I do believe, that the Devices described in Attachment A contains evidence of violations of Title 21, United States Code, Sections 841 and 846 and Title 18, United States Code, Sections 922 and 924 as set forth in Attachment B. I therefore request that the Court issue a warrant authorizing a search of the Devices described in Attachment A for the items listed in Attachment B and the seizure and examination of any such items found.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Affidavit of Michael Aguilar**                                                                 **Page 15**

46.    Prior to being submitted to the Court, this affidavit, the accompanying application, and the requested search warrant were all reviewed by Assistant United States Attorney (AUSA) Adam Delph. I was informed that it is AUSA Delph's opinion that the affidavit and application are legally and factually sufficient to establish probable cause to support the issuance of the requested warrant.

/s/ Michael Aguilar, per rule 4.1

_____

MICHAEL AGUILAR
Special Agent, DEA

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at _____ 3:30pm a.m/p.m. on _____ August 11, 2022 .

_____

HONORABLE MUSTAFA T. KASUBHAI
United States Magistrate Judge

**Affidavit of Michael Aguilar**                                    **Page 16**

**ATTACHMENT A**

**Property to Be Searched**

The property to be searched are a Samsung cellular telephone ("Device #1", previously labeled as Deschutes County Sheriff's Office exhibit JM15) and a Motorola cellular telephone ("Device #2", previously labeled as Deschutes County Sheriff's Office exhibit JM18), currently located in Schaun JOHNSON's "inmate property" on the premises of Deschutes County Sheriff's Office Adult Jail located at 63333 West Hwy 20, Bend, Oregon 97703.

**ATTACHMENT B**

**Items to Be Seized**

1.      All records on Device #1 and Device #2 described in Attachment A that relate to violations of Title 21, United States Code, Sections 841 and 846 and Title 18, United States Code, Sections 922 and 924, involving Schaun JOHNSON, since October 1, 2021, including:

      a.      Information related to all alternate messaging applications, including WhatsApp, Facebook Messenger, Signal, and Wickr.

      b.      Lists of drug customers and related identifying information.

      c.      Types, amounts, and prices of drugs and/or firearms trafficked as well as dates, places, and amounts of specific transactions.

      d.      Information related to sources of drugs and/or firearms (including names, addresses, phone numbers, or any other identifying information).

      e.      Information recording JOHNSON's schedule or travel from October 1, 2021 to the present, including any rental car reservations.

      f.      Bank records, checks, credit card bills, account information, and other financial records.

2.      Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.      Records evidencing the use of the Internet, including:

      a.      Records of Internet Protocol addresses used.

      b.      Records of Internet activity, including firewall logs, caches, browser

history and cookies, "bookmarked" or "favorite" web pages, search terms that the user

entered into any Internet search engine, and records of user-typed web addresses.

    c.  Records of data storage accounts and use of data storage accounts.

  4.  As used above, the terms "records" and "information" include all of the foregoing

items of evidence in whatever form and by whatever means they may have been created or

stored, including any form of computer or electronic storage (such as flash memory or other

media that can store data) and any photographic form.

<strong>Search Procedure</strong>

  5.  The examination of the Devices may require authorities to employ techniques,

including but not limited to computer-assisted scans of the entire medium, that might expose

many parts of the Devices to human inspection in order to determine whether it is evidence

described by the warrant.

  6.  The initial examination of the Devices will be performed within a reasonable

amount of time not to exceed 120 days from the date of execution of the warrant.  If the

government needs additional time to conduct this review, it may seek an extension of the time

period from the Court within the original 120-day period from the date of execution of the

warrant.  The government shall complete this review within 180 days of the date of execution of

the warrant.  If the government needs additional time to complete this review, it may seek an

extension of the time period from the Court.

  7.  If, at the conclusion of the examination, law enforcement personnel determine

that particular files or file folders on the Devices or image do not contain any data falling within

the scope of the warrant, they will not search or examine those files or folders further without

authorization from the Court.  Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

8.      If an examination is conducted, and it is determined that the Devices do not contain any data falling within the ambit of the warrant, the government will return the Devices to its owner within a reasonable period of time following the search and will seal any image of the Devices, absent further authorization from the Court.

9.      If the Devices contains evidence, fruits, contraband, or is an instrumentality of a crime, the government may retain the Devices as evidence, fruits, contraband, or an instrumentality of a crime or to commence forfeiture proceedings against the Devices and/or the data contained therein.

10.     The government will retain a forensic image of the Devices for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

**Attachment B**                                                                                   **Page 3**